I'm sorry about that and may please support. My name is Richard Rocco and I represent the Association of Women with Disabilities. You just speak right into your, you're kind of cutting in and out a bit so you need to speak a little better there in your mic. In December 2016, Uber authorized Mr. Grice to provide transportation services pursuant to a contract known as the Razor Agreement. Mr. Grice, as an authorized Uber driver, picked up and dropped off riders at the Huntsville and Birmingham, Alabama airports and transported them to their final destination. These riders were traveling interstate. Significantly, Mr. Grice was only able to pick up drivers at an airport because Uber contracted or arranged with the airport authorities to allow them. Now, following a data breach that Uber did not dispose of approximately a year, Mr. Grice filed suit in 2017. Uber moved to fulfill arbitration both under the driver and rider agreement. With respect to the claim, based on his status as a driver for Uber, Mr. Grice opposed the motion on the grounds that the Razor Agreement was a contract for employment of a transportation worker engaged in interstate commerce. All right, so Mr. Rocco, you want us to interpret the Section 1 residual clause that would apply to workers like Grice to provide transportation services to persons or goods traveling across state line, right? That's what you want. You want the exception because they transport people that are crossing state lines, but factually, they do not cross state lines in this case, correct? So you want us to import their passenger status to say that that entitles you to Section 1 residual clause exemption, right? That is correct. And we think that that's permissible under sort of the law that's interpreted or the cases that interpret it. Well, you don't have anything on point that says that. Well, I think what says that is the Uber, I mean, the Singh versus Uber Technologies case. That is correct. There's no controlling Ninth Circuit precedent that says that. But our position that Singh versus Uber Technologies, which is the Third Circuit case, does in fact say that the interstate transportation of people who are moving across interstate lines is constantly engaging in interstate commerce. Then you could argue by extension if some are crossing state lines, then the fact that that Uber driver didn't, the business model would be such that, like the Amazon case, that because not every prime driver crosses state lines, but Amazon crosses straight lines. But right now, Uber doesn't cross, the drivers in these factual predicate don't cross straight lines, right? Well, that is correct as to Mr. Grice. He did not transport people across state lines. But that is not to say that there are not Uber drivers that do that. But have you made a showing to that effect, counsel? Excuse me? Is there evidence in the record to that effect? There is no evidence in the record, Your Honor, that states that drivers, for example, in the New Jersey area, New York, New Jersey area, travel across interstate lines. No, we're talking about Alabama, are we not? Yes, sir. We're talking about Alabama. And in Alabama, as Mr. Grice has admitted, he does not transport passengers or has not transported passengers across state lines. But that's only one way that a driver would fall under the exemption of Section 1, which applies to workers who are engaged in interstate commerce. There is a precedent on this, both in Uber, both in Uber technology and in the First Circuit's recent decision in LAFACA versus Amazon. But the courts there have made clear and have been the law that to be considered a transportation worker engaged in interstate commerce, an individual does not themselves have to cross or transport goods or people across state lines. If they're involved in the practical responsibility of an interstate movement, then they would be deemed or transit workers engaged in interstate commerce. And that's exactly what Mr. Grice has argued. And where the court, the district court, committed clear error is that it found, as a matter of law, when it interpreted Section 1, that the Section 1 exemption found in the Federal Transportation Act did not only apply to interstate transportation of physical goods moving across state lines, but specifically excluded interstate passengers who have traveled across state lines. Mr. Rucco, I'm having difficulty hearing you. Can you turn up the volume on your unit there? You come in and out. At certain points, you're bobbing like this. And at some points in your bob, you have better reception. So that's all I can tell. I don't know how to phrase you, but... That's just my Cuban background. I know, I know. But see, you just did that right like that. So if you can hold whatever, where we get you the best, that would be helpful. Stay close to the mic. Does that work? Is this better? Yes. That's better. Thank you. The district court committed clear... When you're analyzing the bombing factors, because we're here on a petition for mandamus, the most important factor, I think, under this Ninth Circuit case law is whether there's been a clear error committed here. Clear error of law. Clear error of law. Yes, sir. That there's a clear error of law. The petitioner, Mr. Grice, contends that limiting Section 1's engaged in interstate commerce provision to intrastate transportation of physical goods moving across state lines has no basis in the FAA and no basis in the history of that statute. For example, and I think the most telling point in the case that's most specific on point on this issue is the Third Circuit's decision in Singh v. Uber. In that case, the court found that, in fact, Section 1 exemption did not require or actually applied to individuals that are transporting passengers across state lines. In that case, there was the business, there was evidence transported passengers over state lines. What evidence in this record is there that Uber, the business Uber, transports passengers over state lines? Your Honor, I do not believe that in Singh v. Uber technologies there was evidence that Uber transported people across state lines. But the evidence was there, and in fact, the Third Circuit did not reach this issue. What there was evidence of is there was a declaration that was submitted by the driver, Mr. Singh, saying that on occasion he had traveled across state lines. But the Third Circuit specifically said, we're not addressing that issue. That's an issue we're going to remand to the district court to resolve. What the issue that they had before them was the question of whether Section 1 exemption excluded somehow drivers who are transporting passengers. And on that point, it emphatically said it did not. But what it further noted, what the court noted was that there really was no, not only does the text of Section 1 not support such a limitation, but that the court in Chiefton City didn't impose such a limitation either. The court in Singh found that with a lot of the decisions, and you have that here in the court decision below, many of them have relied on DICTA, where the court certainly makes reference to the transportation, the interstate plot, the engaging in interstate commerce as one involving individuals that move goods across lines. Counsel may ask, is there any Ninth Circuit case that would be authority on this point? You're citing to a Third Circuit case. What's the Ninth Circuit law on this question of crossing state lines? Your Honor, I am not aware of a Ninth Circuit case that addresses Section 1 exemption. So there's no controlling authority here? That is correct, Your Honor. There is no controlling authority. But I think if the case, for example, the Van— But if there is no controlling authority, and this is on mandamus, and we have to look at the factors, how did the district court clearly err? Well, in Van Dusen versus United States District Court, there the Ninth Circuit said that clearly one of the things that you look at in making a decision whether there's clear legal error is Ninth Circuit controlling precedent. But it wasn't limited to that. It looked at—the court also made reference to other circuit court opinions that address the specific issue. And in this particular case, the district court had before it the Uber decision. Now, subsequently, the First Circuit has also followed the Third Circuit's view of not limiting the Section 1 exemption to just the movement of goods across the lines, but rather that that clause encompasses not only the movement of passengers, but also moving passengers within the interstate as long as it's the practical continuity of an interstate movement. And we know that that is the most accurate interpretation. Do you want to save any time for rebuttal? Yeah, I would like to save three minutes for rebuttal. Okay. So the reason why that is the correct interpretation is because the Supreme Court, in a case called U.S. versus Capital Transit, there the court found that a bus company—and this was submitted by the rule on a Rule 23J supplemental authority letter— that the Supreme Court in Capital Transit found that a bus company that transported passengers through the district line, and then those individuals went on further into Virginia, that that bus company was engaged in interstate commerce for the purposes of the ICC. So the point is that you have Supreme Court authority that says that interstate transportation of passengers is considered interstate commerce as long as those passengers are in the continuity or in the practical flow of an interstate movement. And if an interstate not to speak was picked up in an interstate movement who were in the practical continuity of interstate travel, then you're fine with this. With that, I'd like to reserve my remaining time. Okay, thank you. All right, Ms. Evangelist. Good morning, Your Honors, and may it please the Court. My name is Deanna Evangelist, and I represent Real Party and Interest Uber Technologies. This case comes nowhere close to justifying the extraordinary mandamus relief that petitioner seeks for several reasons, including that mandamus would not change the outcome here because petitioner's counsel admits petitioner agreed to two separate arbitration agreements, the rider agreement and the driver agreement, but did not challenge the decision compelling arbitration under the rider agreement. In addition, petitioner had other means of relief, and he would suffer no irreparable harm. What are those other means of relief, counsel? What other means of relief were you addressing? Thank you, Your Honor. Petitioner could have filed a 1292B petition to request interlocutory review of the order. He waited two and a half months instead to file a mandamus petition. But, of course, mandamus is not appropriate unless the district court's decision is clearly erroneous. And here, as petitioner's counsel admits, there is not a single Ninth Circuit authority that he can point to that conflicts with the district court's decision. In the absence of Bauman Factor III, clear error as a matter of law will always defeat a petition for mandamus. All right, let's just say hypothetically, would the district court have clearly erred if Grice did cross state lines? No, Your Honor, it would not, because what matters is the class of workers. Section 1 speaks to the class of workers. And I'll point the court to the Seventh Circuit's decision last week in the Wallace case, which I think is very helpful in understanding what is necessary for Section 1 to apply. The central job description of the class of workers has to be interstate movement in some fashion. And here, it is undisputed that whether we're talking about petitioner, Mr. Grice, or the class of workers, which is, again, what matters, there is absolutely no dispute that the work is inherently local. So here, the district court held that for a number of reasons. One of them was because Mr. Grice never crossed state lines, that he only locally transported passengers, but also he was not part of a group, a class of workers engaged in foreign or interstate commerce. He doesn't fall within the exemption. That is not clearly erroneous. So looking at the evidence in the record here, it's clear that the central job description of a rideshare driver and driver who uses the Uber app, as Judge Chen found in the Capriol case and Judge Shabria found in the Rogers versus Lyft case, that work is inherently local. And here in the record, we know that the average distance of a trip in the Huntsville, Alabama area, for example, is about five miles. The average duration is about 11 minutes. That is indisputably local, and petitioner has never alleged otherwise. He admitted in his declaration he used the app to arrange transportation in the Huntsville and Birmingham area. And so here we have no evidence whatsoever that this class of workers is, quote, actively engaged in the enterprise of moving anything across state lines. And there I'm quoting from Judge Barrett's decision in Wallace for the Seventh Circuit. I think it is very helpful in understanding the narrow Section 1 exemption and what is required. And petitioner's only argument here is that he is nonetheless engaged in interstate commerce because he transports riders to and from the airport as one portion of their independent interstate travel. But that fails as a matter of law. It does not show engagement in interstate commerce because it is casual and incidental. It depends only on the individual decisions of passengers. It is not part of an integrated and unbroken chain of interstate travel. And, again, I think that the Wataka decision from the First Circuit is completely distinguishable on that basis. Petitioner relies on that case. And the U.S. Supreme Court rejected that theory as a matter of law in the Yellow Cab decision. There, interpreting the Sherman Act, which, of course, we know is interpreted broadly, while Section 1, we know under Circuit City, is interpreted narrowly. The Supreme Court said in Yellow Cab very clearly that where the relationship to interstate transit is only casual and incidental and not part of a continuous, unbroken interstate trip, it doesn't constitute interstate commerce under the Sherman Act. And so here, this petitioner's allegation or whole theory is really just like the cab rides in Yellow Cab that were to and from the railroad station but weren't part of some prearranged trip that a passenger booked. And the court distinguished between the trips between railroad stations. Those were prearranged contractually and part of a continuous, unbroken interstate trip. So here, as a matter of law, where there is nothing more than an incidental and casual relationship to interstate transit, this is not, certainly not clear error for the District Court to hold that Section 1 does not apply. And the District Court's decision in Rogers v. Lyft is very helpful on this point. And, Your Honors, there is a unanimous consensus within the Ninth Circuit. District Courts are all in agreement. Not a single court has found that a worker who uses an app to deliver passengers or goods locally, as petitioner here, or the plaintiffs in the Capriol v. Uber case, or the Rogers v. Lyft case, and we cited many others. There is a uniform consensus that those do not fall under Section 1. So this is not, clearly not, clear error for the District Court to have agreed with that consensus. And as petitioner admits, there is no distinction in the Ninth Circuit that is contrary. Did you address, I'm sorry, we've been talking about a lot of things and I can't remember whether it was the appellant or you. Did you address Douglas and the second Bowman factor on forcing to arbitrate that the adequate, no other adequate means ensuring to continue class represents would prejudice him in a way that's not correct for an appeal? Did you address Douglas? No, Your Honor, I'd be happy to address that. And what distinguishes this, your case, from Douglas, if you can? Yes, well, first of all, in American Express v. Italian Colors and AT&T v. Concepcion, it is very clear that the ability to bring a class action is a procedural matter and not a substantive right. So it is not a right independent of whatever claim an individual has. No prejudice from compelling arbitration because plaintiff, petitioner, had the opportunity to opt out of the arbitration agreement that included the class waiver. And he chose not to. So I think it's very important. And also, there are cases that involve decisions compelling arbitration that come up on direct appeal after a court dismisses the case. But here, where the court ruled that he was bound to arbitrate by both the rider and driver agreement, and his argument under Section 1 applies only, only to the driver agreement. So there is an independent basis for compelling arbitration. So for all of those reasons, I think the concern of Douglas does not apply here because, once again, there's an independent and adequate and undisputed ground for compelling arbitration. So I think that that is the key way to look at that. Okay, thank you. And I would like to address the Singh case because Petitioner's Counsel relies heavily on that case. It is distinguishable for many reasons. The most important one is that it did not decide, first of all, whether the Section 1 exemption applied. It simply considered whether the district court's decision in that case, which adopted a bright-line rule that transportation of passengers could never fall under Section 1, it considered whether that was proper and whether that rule was the end of the inquiry. And the court disagreed based on earlier Third Circuit precedent that had held that Greyhound buses traveling across the country transporting passengers fell within the exemption. But here, of course, we don't even need to consider whether goods versus passengers makes a difference because the nature of the activity is inherently local and it is undisputed as such. And even if we look at the Yellow Cab decision from the Supreme Court, it's very clear that this is not the type of activity that falls within Section 1 because the central job description, I'll go back to Wallace from the Seventh Circuit, is not moving anything across the state line. Except if you are working at the Newark Airport and regularly taking passengers into New York City. That's interstate transportation, correct? I don't believe it. And are we to focus on the individual driver or are we to focus on Uber as an entity? Uber as an entity clearly is in the business of transporting people within the flow of interstate commerce, is it not? It is not, Your Honor. First, we have to look at the activity of the drivers and the drivers who are using the Uber app and other apps. That is an inherently local activity and it is not part of an unbroken chain of interstate commerce. And I'll again quote the Wallace case which focused on the activities of the workers and not where the goods or here the passengers had been. And here, picking someone up from the airport, they can use Uber, they can use a bus, they can have a friend pick them up, they can park their own car. It is because of their independent choice to use Uber or take a cab that they end up doing one or the other. It's no different. The fact that drivers using Uber have access to pick people up at the airport is no different than a cab stand that happens to be at the airport. And the Supreme Court in Yellow Cab made very clear that where the decision was based on an individual passenger's choice to take the cab from the railroad station, even if they were coming from out of state, that wasn't enough. And we do have to focus on the class of workers here. This is not only about Mr. Bryce and he put in no evidence about the class of workers. It is undisputed that, at least from his position, his only theory is the casual and incidental connection to interstate commerce from picking people up at the airport. But the fact that there is nothing to dispute that precludes a finding of clear error here from the district court. And the difference also is that there is no company here operating an interstate line. There's no interstate bus line with legs that is integrated. There is just casual and incidental pickups or you happen to get someone who came from out of state. But unless it is integrated, for example, I think we have to look at the Wataka case and the cases that were cited in there and Yellow Cab, see very starkly the difference here. Because unless there is some overarching interstate trip of which the driver is a part of an unbroken chain that was coordinated by the larger enterprise. And here Uber did no such thing. Uber did not coordinate a trip that came from out of state. It did not tell the driver to pick up someone that it had arranged to bring from Boston or New York. It did nothing of the sort. And the driver here just happened to use the app to pick people up in the local community. So I think that is the key distinction, but it is certainly not clear error for the district court here to have agreed with every other court in the 9th Circuit and with the 7th Circuit. And I believe it's absolutely consistent with the 1st Circuit and the 3rd Circuit decisions of sufficient size. So for all of those reasons, I believe that this does not fall within Section 1. It was not clear error to hold as much. And the court should deny the petition for extraordinary relief because it doesn't come close to meeting the standard. And unless the court has any further questions, I can end there. Judge Scanlon or Judge Watson, any additional questions? No, no further questions. Thank you for answering my question. Thank you. All right. Mr. Rocco, you have 2 minutes and 49 seconds for rebuttal. Thank you, Your Honor. In response to the reference, the argument that's been constructed on the Wallace, unfortunately, I didn't have the benefit of that argument prior to the day, which is the argument that Wallace limited to a class of transportation workers and that you have to look overall at what all these character of the work. And I don't think that that distinction really saves the district court's opinion. The district court's opinion here stated that interstate movement of passengers who arrive from out of state is not considered part of interstate commerce. Based on that, even though Mr. Grice was picking up people pursuant to an agreement that Uber had with airport authorities and carrying them on to their final destination, it concedes that factually that that happened, but decided as a legal matter that the interstate portion of moving a passenger is not sufficient under Section 1 to be engaged in commerce. And we think that that decision is clearly erroneous. The court need only refer to Capital Transit. That's not correct. In Capital Transit, bus service that took people to the district line of District of Columbia, and then those individuals moved on. It was the choice of those bus riders to use the transit company, and those individuals were dropped off without the bus company actually crossing interstate lines. And the court still found that that was the practical flow of interstate commerce because those passengers moved on to Virginia or other places. I have a question about the question that's raised by my friend on the other side, that you have to look at the individual choice of passengers, and that there's no transaction where Uber really has no role in the dispatch of an automobile or a driver to pick up a passenger. This, to me, doesn't reflect the fact. I mean, as the court found, there's a lot of drivers who drive for Uber. They serve over 57 million people in the United States. The way the app works is somebody in New York can arrange through the app to have somebody in Birmingham go to their ultimate destination when they arrive in Birmingham. So it is Uber's dispatching, and it is Uber's technology that handles the collection of passengers. So if you look at those facts, you can see that this is very different from the situation that was involved in New York. And I see my time is up. Your time has expired. Thank you both for your helpful argument in this matter. It will stand submitted, and this court will be in session until tomorrow morning at 9 a.m. Thank you, counsel. Thank you, Your Honor. Thank you. Thank you.
judges: O'scannlain, Callahan, Watson